IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WINOMA TAYLOR, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )  CIVIL ACTION 12-0320-WS-C |
| | ) |
| PIGGLY WIGGLY OF BAY MINETTE, | ) |
| ALABAMA, et al., | ) |
| | ) |
|    Defendants. | ) |

ORDER

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 9). One defendant has filed a response, (Doc. 11), the plaintiffs declined to file a reply, (Doc. 10), and the motion is ripe for resolution.

BACKGROUND

The amended complaint alleges that plaintiff Winoma Taylor was slipped, fell and was injured at a Piggly Wiggly grocery store in Bay Minette, Alabama in 2010. The amended complaint names as defendants "Piggly Wiggly of Bay Minette, Alabama" ("Piggly Wiggly") and Food Giant Supermarkets, Inc. ("Food Giant").[1] Ms. Taylor brings claims of negligence and wantonness, and co-plaintiff Odis Taylor brings a claim for loss of consortium. The complaint's ad damnum clause seeks compensatory damages for medical expenses, mental anguish and pain and suffering, as well as an award of

---

[1] The amended complaint also lists several fictitious defendants but, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

punitive damages, but specifies no dollar amount demanded.  The amended complaint establishes that the plaintiffs are citizens of Alabama.  (Doc. 1, Exhibit B).

## DISCUSSION

Food Giant timely removed on the basis of diversity of citizenship.  The plaintiffs argue that Food Giant has not met its burden either of showing that the amount in controversy exceeds $75,000 or that its principal place of business is not in Alabama.  The Court discusses these arguments in turn.

**A.  Amount in Controversy.**

"[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement."  *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  Because the plaintiff has made an unspecified demand for damages, the *Tapscott* standard applies here.

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.  If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."  *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

The amount in controversy is not apparent from the face of the amended complaint, because there is no way to determine from it whether Ms. Taylor has sustained

injury so severe as to make it more likely than not that over $75,000 is in controversy.[2] Food Giant does not argue otherwise; instead, it relies on the plaintiff's pre-suit settlement demand. A defendant is entitled to supplement the complaint with evidence in its possession. *E.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010).

"While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). What it counts for, however, depends on the circumstances. Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide "specific information ... to support [the plaintiff's] claim for damages" suggest the plaintiff is "offering a reasonable assessment of the value of [his] claim" and are entitled to more weight. *Golden Apple Management Co. v. Geac Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998). The Court has adopted this as the correct analysis. *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009).

Prior to filing suit, the plaintiff sent a letter demanding $225,000. (Doc. 1, Exhibit C). Standing alone, that figure would probably be considered mere puffery, but the letter expressly represents that "Ms. Taylor's medical expenses are approximately Seventy Thousand Dollars ($70,000)." (*Id*. at 1). This is not puffery but specific information about hard, past damages. Absent any apparent or articulated reason for discounting this explicit representation of concrete facts – and the plaintiffs offer none – it is to be taken at face value.

---

[2] *Cf. Williams,* 269 F.3d at 1318, 1320 (allegations that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, that she incurred substantial medical expenses, that she suffered lost wages, that she experienced a diminished earning capacity, and that she would continue to suffer these damages in the future, along with a demand for both compensatory and punitive damages, did not render it facially apparent that the amount in controversy exceeded $75,000).

The balance of the demand letter makes clear that Ms. Taylor's other compensatory damages cumulatively exceed the modest $5,000 needed to bring the amount in controversy above the jurisdictional threshold.  First, it states that her medical expenses will continue.  Second, it states that, due to the Piggly Wiggly incident, Ms. Taylor "can no longer drive, requires the use of a walker, and remains in constant pain."  Moreover, she "is unable to maintain her home, climb stairs, walk freely in her yard, or do many standard life's functions."  (Doc. 1, Exhibit C at 1).  It is unnecessary to quantify these damages in order to draw the conclusion that they place more than $5,000 in controversy.[3]

The plaintiffs insist that their demand letter "does not prove to a legal certainty that the amount-in-controversy in the Taylors' claim is greater than the statutory

---

[3] Food Giant would add into the mix co-plaintiff Odis Taylor's claim for loss of consortium.  (Doc. 1 at 11).  However, it has not accounted for the rule that "we do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement simply because they are joined in a single lawsuit."  *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 974 (11th Cir. 2002).  While an exception exists when the plaintiffs "unite to enforce a single title or right, in which they have a common and undivided interest," *Zahn v. International Paper Co.*, 414 U.S. 291, 295 (1973) (internal quotes omitted), such an interest "exist[s] only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally."  *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1262 (11th Cir. 2000).  It is doubtful that a claim for consortium meets this high standard.  *See, e.g, Menard v. Hewlett Packard Co.*, 2012 WL 2938010 at *3 (E.D. Pa. 2012); *Cortez v. Tents N Events, Inc.*, 2009 WL 5174143 at *2 n.2 (E.D. La. 2009); *Martinez v. J.C. Penney Corp.*, 2008 WL 2225663 at *3-4 (S.D. Fla. 2008); *Runk v. Wal-Mart Stores, Inc.*, 2006 WL 3308670 at *1 (M.D. Pa. 2006); *Foster v. Home Depot, Inc.*, 2006 WL 470596 at *1 n.2 (E.D. Pa. 2006); *Clark v. Buske Lines, Inc.*, 2006 WL 51195 at *2 (E.D. Mo. 2006); *Poplar v. KKI, LLC*, 2005 WL 2739158 at *2 (W.D. Ky. 2005).

Regardless of whether Mr. Taylor's consortium claim can properly be aggregated with his wife's claim for personal injury, subject-matter jurisdiction exists as to her claim, and the Court may exercise supplemental jurisdiction over his claim.  *Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558-59 (2005).

minimum." (Doc. 9 at 14). Perhaps not, but the "legal certainty" test does not apply here, since the complaint does not specifically demand a figure less than $75,000. Using the correct standard of preponderance of the evidence, Food Giant has more than met its burden with respect to establishing the amount in controversy.[4]

### B. Fraudulent Joinder.

As noted, the complaint names Piggly Wiggly as a defendant. Food Giant has produced unchallenged evidence from the Alabama Secretary of State's website that Piggly Wiggly, though it was once an Alabama corporate citizen, was legally dissolved in 1982. (Doc. 1, Exhibit E). The plaintiffs state that they did not intend, by naming Piggly Wiggly, to "project a resurrection of a corporation dissolved some thirty years ago." Instead, they say, they named Piggly Wiggly because neither Food Giant nor the Bay Minette store "present[s] any public representation of entity structure or relationship in the day to day public interaction by which they seek to attract customers and do business with the public" and that Piggly Wiggly "is simply the manner by which the grocery store is identified on various websites and other information available to the Taylors at the time of filing the Complaint." (Doc. 9 at 3-4). In other words, they sued what they admit is a "non-existent entity," (*id*. at 3 n.3), out of ignorance.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). As applicable here, the removing defendant must show "by clear and convincing evidence" that "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Henderson v. Washington National*

---

[4] The plaintiffs suggest that, even if the requisite amount is in controversy, "it alone is not sufficient for removal since the state courts are equally capable of dealing with injuries involving damages with amounts in controversy in excess of statutory minimums for federal courts." (Doc. 9 at 4). Certainly the state courts are competent to deal with the plaintiffs' lawsuit, but that is utterly irrelevant to the availability of removal.

*Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Stillwell v. Allstate Insurance Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (internal quotes omitted). "In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

There is plainly no possibility the plaintiffs can establish a cause of action against a defendant that ceased to exist decades before the conduct made the subject of the suit. Whether or not evaluated under the rubric of fraudulent joinder, the naming of a non-existent entity cannot destroy diversity. *Compare Davis v. OneBeacon Group*, 721 F. Supp. 2d 329, 337 (D.N.J. 2010) ("There is no need to address the doctrine of fraudulent joinder because the Court accepts PA General's representations that OneBeacon is a non-existent entity.") *with Bernsten v. Balli Steel, PLC*, 2008 WL 862470 at *9 (E.D. Pa. 2008) ("[T]he Court already has found that Plaintiffs fraudulently joined the non-existent ASI-Balli ….").

The plaintiffs do not expressly argue that Piggly Wiggly's presence defeats complete diversity, but they appear to suggest that, even though it is not an existing corporate entity, it somehow remains an unincorporated but independently suable "subsidiary" of Food Giant. (Doc. 9 at 3). They offer neither argument nor authority to support their implausible assertion, and Food Giant's unrebutted evidence unequivocally negates any such contention. (Doc. 11 at 2). *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (while, in resolving a fraudulent joinder issue, disputed questions of fact must be resolved in favor of the plaintiff, there must first be a disputed question of fact).

**C. Principal Place of Business**.

"We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's

6

activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  This place is commonly called the corporation's "nerve center," and "in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination …." *Id*.

The plaintiffs concede that Food Giant is incorporated in Missouri.  (Doc. 9 at 5). Even though their amended complaint alleges that its "principal business address" is in Sikeston, Missouri, (Doc. 1, Exhibit B at 2), they now argue that Food Giant has not shown that its principal place of business is there, based on evidence that its vice-president resides and works in Geneva, Alabama.  (Doc. 9 at 5-6, 9).[5]  The plaintiffs'' own evidence, however, establishes that Food Giant's president and secretary reside in Missouri.  (Doc. 9, Exhibit 7).  The vice-president's affidavit, moreover, states that, while his office is in Alabama, he is directed from Sikeston and that "[a]ll corporate control and coordination of Food Giant's business activities are directed from the Food Giant headquarters in Sikeston, Missouri."  (Doc. 11, Exhibit C).  This affidavit, unchallenged by the plaintiffs, renders insignificant the vice-president's location in Alabama and effectively establishes Missouri as Food Giant's principal place of business.

The plaintiffs also rely on hearsay statements that Food Giant is based in Miami and that it has been purchased by a Kentucky concern.  (Doc. 9 at 7 & Exhibits 11-13). Assuming without deciding that the Court may properly consider these materials, they do not assist the plaintiff.  At the very best, they might suggest that Food Giant's nerve center is in Florida or Kentucky; they do not in the slightest suggest that its nerve center is in Alabama.

The plaintiffs insist that a principal place of business exists only where "*all* the business decisions of the corporation are made."  (Doc. 9 at 5 (emphasis in original)). This cannot possibly be correct in light of *Friend*, which recognized that, "in this era of

---

[5] The plaintiffs claim that Food Giant's engineering department, buyer and ad coordinator also are in Alabama, (Doc. 9 at 9), but they offer no evidence to support their contention.  Nor, for reasons set forth in text, would it matter if they had.

telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations," yet the nerve center test still "points courts in a single direction, towards the center of overall direction, control, and coordination."  130 S. Ct. at 1194.  Even could the plaintiffs' implausible suggestion be credited, and even had they produced evidence that some of the relevant decision-making is made not in Missouri but in Alabama, under the plaintiffs' proposed test this state of affairs would not mean that Food Giant's principal place of business is in Alabama but would mean that the corporation has *no* principal place of business, including in Alabama.[6]

The plaintiffs concede that Food Giant's burden is to show its principal place of business by a preponderance of the evidence.  (Doc. 9 at 10).  The evidence discussed above establishes by a preponderance of the evidence that Food Giant's principal place of business is in Missouri.  More critically, it establishes that its principal place of business is not in Alabama.

## CONCLUSION

For the reasons stated above, the plaintiff's motion to remand is **denied**.

DONE and ORDERED this 16th day of August, 2012.

                                                s/ WILLIAM H. STEELE
                                                CHIEF UNITED STATES DISTRICT JUDGE

---

[6] To the uncertain extent the plaintiffs intend to suggest that a corporation may have more than one nerve center, they are wrong.  "A corporation's 'nerve center,' usually its main headquarters, is a single place."  *Friend*, 130 S. Ct. at 1193.